A00A1615. BULLINGTON v. FAYETTE COUNTY SCHOOL DISTRICT et al.
(540 SE2d 664)

SMITH, Presiding Judge.

Rickey M. Bullington appeals from the trial court's grant of summary judgment to the Fayette County School District and Dave Brotherton, its Superintendent (collectively "the school district") in the suit brought by Bullington to recover back wages and penalties he claims are due him as overtime compensation under certain provisions of the Fair Labor Standards Act ("the Act"). 29 USC §§ 207 (a) (2); 216 (b). The school district answered, and cross-motions for summary judgment were filed. The trial court granted the school district's motion and denied that of Bullington. Bullington appeals, contending the trial court erred in finding that he waived his right to maintain an action under the Act and that he is an executive exempt from the Act's overtime provisions. We find no error and affirm the grant of summary judgment to the school district.

The record shows that Bullington was employed as head custodian at a Fayette County elementary school. He supervised two other full-time custodians and a number of part-time custodians. According to his principal, these supervisory duties took up more than 50 percent of Bullington's time. As a favor to Bullington, in late spring or summer 1996 he was hired as one of the part-time custodians, with night and weekend responsibilities, in addition to his full-time job as head custodian. He was paid a salary for his job as head custodian, while he was paid on an hourly basis for his job as part-time custodian.

Shortly after a new Human Resources Staff Development Director was hired by the school district, she reviewed employment-related issues, including the district's compliance with the Act. Based upon this review, the district became concerned about a problem

with overtime compensation for hourly employees. The school district held meetings with officials of the U. S. Department of Labor, who instructed the district to provide them with documents showing which employees worked more than 40 hours per week, how many hours each worked, how much they were paid, and the appropriate pay under the regulations. Some of the school district's calculations were inaccurate, according to the Department of Labor officials, and the school district corrected them to the Department of Labor's satisfaction. Bullington's overtime pay was included in the approved calculations. The Department of Labor then provided the school district with a copy of its receipt Form WH-58 for each employee due back wage payments and instructed the school district to give the form to each employee along with his or her settlement check.

On December 18, 1997, the school district, under the supervision of the U. S. Department of Labor's Wage and Hour Division in Atlanta, sent to Bullington an overtime settlement payment in the gross amount of $3,811.03, along with the form WH-58. The form recites:

> NOTICE TO EMPLOYEE. — Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16 (b) of that Act. Section 16 (b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally a 2-year statute of limitations [sic] applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Bullington cashed the check, and he testified by affidavit that he "was presented a check in the gross amount of $3,811.03 that I was told was the full payment I would receive for unpaid overtime for a two-year period." He did not, however, sign the attached WH-58 form.

1. The trial court found that Bullington "waived his right to sue for any additional payment" by cashing the check. Bullington contends this finding was error because he did not sign the WH-58 form. We do not agree.

The issue raised by Bullington requires us to construe federal statutes. To address Bullington's contentions, therefore, we first look to those statutes and the cases interpreting them. 29 USC § 216 (c) provides, in pertinent part:

> The Secretary is authorized to supervise the payment of the unpaid . . . overtime compensation owing to any employee

or employees under section 6 or 7 of this Act, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid . . . overtime compensation and an additional equal amount as liquidated damages.

The cases construing this subsection are instructive. They hold, for instance, that this subsection serves to provide an incentive for employers, by avoiding additional liability, to pay the required overtime under the supervision of the Department of Labor. It provides employees with a choice: take the settlement offered immediately and forgo the right to additional damages, or forgo immediate payment and pursue the right to additional damages. *Rose v. Consolidated Elec. Distrib.*, 816 FSupp. 489, 490 (N.D. Ill. 1993).

The crucial element for waiver is a demonstration that the settlement, although not payment in full, was supervised by and approved by the Department of Labor.

> Ordinarily there would be no need for a statute allowing settlement of a dispute between employer and employees — people may resolve their own affairs, and an accord and satisfaction bars a later suit. Yet the Fair Labor Standards Act is designed to prevent consenting adults from transacting about minimum wages and overtime pay. Once the Act makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay. Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages. Courts therefore have refused to enforce wholly private settlements. See *Lynn's Food Stores, Inc. v. United States*, 679 F2d 1350, 1352 (11th Cir. 1982). Yet a prohibition of settlement ensures costly litigation, even though the parties might be able to compromise their dispute without subverting the principles of the statute. Section 16 (c) creates the possibility of a settlement, supervised by the Secretary to prevent subversion, yet effective to keep out of court disputes that can be compromised honestly.

*Walton v. United Consumers Club*, 786 F2d 303, 306 (7th Cir. 1986). Bullington is correct that payment alone is not enough to cause a waiver. There must also be a release or acknowledgment that it is payment in full. Id. In *Walton*, there was no such release on the

check, and the Department of Labor did not send out form agreements or ask the employees in question to surrender or waive any rights. The Seventh Circuit held that "[t]he employees' cashing of the checks they received therefore did not release their full claims against" their employer. Id. at 307.

The Department of Labor, however, differentiates among various types of settlements. When it believes it has achieved a settlement close to what it believes is "full payment" for the employees it sends them a form WH-58 or a similar agreement. Such agreements explicitly release the right to sue, and employees are requested to sign the form "if they wish to take the money." *Walton*, supra at 306. If the Department of Labor does not believe the settlement achieves enough for the employees, it does not send out the forms or solicit employees' signatures. Id. In this manner, the supervision of the Department of Labor replaces the private bargaining the statute prohibits. Id.

Bullington's reliance upon *Walton* is misplaced. In *Walton* the Department of Labor sent out no forms, and the employer in *Walton* was arguing that cashing the settlement check *alone* was sufficient to create a waiver. In this case, the Department of Labor supervised the settlement and determined that it achieved "enough" for the employees in issue; form WH-58 was sent out with the checks.

*Mion v. Aftermarket Tool &c. Group*, 990 FSupp. 535 (W.D. Mich. 1997) is similar to this case, in that the employee in *Mion* cashed the settlement check but refused to sign the accompanying release forms. Id. at 537. She then filed suit under the Act for damages. The court held that the employee's refusal to sign the release form did not prevent waiver. By accepting the *Department of Labor-supervised* payment, which was accompanied by the release form, the employee waived the right to litigate. Id. at 540-541.

In *Heavenridge v. Ace-Tex Corp.*, 1 WH Cases 2d (BNA) 1367, 1993 U. S. Dist. LEXIS 21129 (E.D. Mich. September 3, 1993), a similar result obtained. Heavenridge cashed a settlement check but failed to sign an acknowledgment of receipt of payment, which provided that acceptance of the check meant he was giving up any right to bring suit under § 16 (b) of the Act. Id. The *Heavenridge* court acknowledged that the *Walton* court had held that "the mere cashing of a check does not constitute an 'agreement' to settle and thus waiver. [Cit.]" Id. But the *Heavenridge* court distinguished the case before it from *Walton* because, unlike the employer in *Walton*, the check there was forwarded to the Department of Labor, which forwarded it to Heavenridge with the acknowledgment and receipt. Since the receipt was an acknowledgment that acceptance of payment was in "release of all claims," Heavenridge waived his right to sue.

In this case, as in *Mion* and *Heavenridge*, Bullington accepted the payment in settlement of his claim. The check was accompanied by a release form that informed him that *accepting the check in settlement*, not signing the form, would extinguish his right to sue, and he acknowledges that he was so informed. His signature on the form was not necessary to effect the waiver; his claim was waived when he endorsed the check and retained the proceeds. The trial court did not err in granting summary judgment to the school district on the ground that Bullington had no right to sue, having waived that right by cashing the settlement check.

2. Because we have decided that summary judgment in favor of the school district was proper on the ground discussed in Division 1, we need not address the question of whether the trial court correctly found that Bullington was exempt from the Act because he held an executive position. Even if Bullington was not exempt from the Act, he waived his right to sue under the Act by accepting the settlement check, and summary judgment in favor of the school district therefore was proper. A judgment right for any reason will be affirmed. *Schoen v. Cherokee County*, 242 Ga. App. 501, 503 (3) (530 SE2d 226) (2000).

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED OCTOBER 23, 2000.

*Christopher J. Ramig*, for appellant.
*Harben & Hartley, Phillip L. Hartley, Daniel R. Murphy*, for appellees.