# IN THE SUPREME COURT OF IOWA

No. 20–1228

Submitted March 24, 2022—Filed April 22, 2022

JACQUELINE STRUCK,

> Appellant,

vs.

**MERCY HEALTH SERVICES-IOWA CORP.** a/k/a **MERCY MEDICAL CENTER-SIOUX CITY, RODNEY J. DEAN, ALBERT OKINE,** and **EILEEN MIDDLETON,**

> Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Woodbury County, Zachary Hindman, J., Judge.

Medical defendants seek further review of court of appeals decision reinstating negligence claims in action dismissed by district court for noncompliance with certificate of merit requirement in Iowa Code section 147.140. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Thomp J. Pattermann of Gallner & Pattermann, P.C., Council Bluffs, for appellant.

Frederick T. Harris of Lamson Dugan & Murray, LLP, Omaha, Nebraska, for appellee Mercy Health Services-Iowa Corp. Sioux City a/k/a Mercy Medical Center.

John C. Gray of Heidman Law Firm, P.L.L.C., Sioux City, for appellees Rodney J. Dean, M.D., Albert Okine, P.A., and Eileen Middleton, P.A.

**WATERMAN, Justice.**

This appeal presents our first opportunity to address the certificate of merit requirement in Iowa Code section 147.140 (2018) governing medical malpractice actions. The plaintiff was hospitalized to treat her prolonged dizziness. While medicated, she stood up and fell in her hospital room, suffering injuries. She sued the hospital, several physicians, and other healthcare providers involved in her treatment, alleging their "professional negligence." The district court granted the defendants' motion to dismiss on the grounds that she failed to file the certificate of merit required by section 147.140. She appealed, and we transferred the case to the court of appeals, which affirmed the dismissal of the claims alleging professional negligence and negligent hiring, retention, or supervision of professional staff but reversed in part, concluding her petition broadly encompassed claims for ordinary negligence for premises liability or nonprofessional routine care outside the scope of the statute. The plaintiff had not raised that issue in district court. We granted the defendants' application for further review.

On our review, we hold that the district court correctly dismissed the petition under section 147.140. The plaintiff exclusively alleged professional negligence claims that fell within the scope of the statute. The factual allegations establish the plaintiff was admitted to the hospital for treatment of her dizziness and allege the defendants mismanaged her care, supervision, and medication, resulting in her fall. The statute was enacted to enable early dismissal of meritless malpractice actions that require expert testimony to proceed. A

contrary holding would undermine that legislative goal. We decline to allow the plaintiff to evade the statutory requirement by claiming for the first time on appeal that her petition expressly alleging professional negligence also included ordinary negligence claims requiring no certificate of merit.

## I. Background Facts and Proceedings.

We accept as true the well-pleaded facts alleged in the plaintiff's petition. On January 18, 2018, Plaintiff Jaqueline Struck, age fifty-seven, was admitted to Mercy Medical Center (Mercy) in Sioux City to treat her prolonged dizziness, headaches, and unsteadiness when upright or standing. Her physicians adjusted her medication in the hospital but did not impose restraints or other safety measures to keep her from standing unattended. On January 25, Struck stood up, fell, and struck her chin on the floor, resulting in a laceration. Nearly two years later, on January 24, 2020, Struck brought this civil action against Mercy and several physicians, physician assistants, and a nurse practitioner involved in her medical care. She alleged she had a "healthcare provider-patient relationship" with the named defendants and that her personal injuries resulted from their "professional negligence" when providing her "healthcare services," including giving her "medications that were contraindicated with the medications she was already taking."

Her petition then alleged:

16. As a result of the physician-patient relationship between Dr. Rodney J. Dean, Albert Okine, PA, Jeremy Vande Zande, MD, Robbie Robinson, NP, Eileen Middleton, PA and Jacqueline Struck, Dr. Rodney Dean, Albert Okine, PA, Jeremy Vande Zande., MD, Robbie Robinson, NP and Eileen Middleton, PA owed a duty to Jacqueline Struck to possess and use the care, skill and knowledge

ordinarily possessed and used under circumstances by other members of their profession engaged in similar practice.

17. The Defendants breached their duty to Jacqueline Struck to possess and use, care, skill and knowledge ordinarily possessed and used under like circumstances by other members of their profession engaged in a similar practice, because they negligently:

A. Failed to properly supervise Jacqueline Struck considering the medications she was on and the risks they posed for dizziness;

B. Failed to take steps to ensure Plaintiff was safe from falls and injury; and

C. Were negligent in other ways not presently known to the Plaintiff.

Struck's petition included a claim against the hospital for negligent hiring and retention of the individual defendants:

19. Defendant Mercy Medical Center was negligent in hiring and retaining Rodney Dean, MD, Albert Okine, PA, Jeremy Vande Zande, MD, Robbie Robinson, NP and Eileen Middleton, PA and non-party staff who were individually and jointly responsible for her care and treatment.

20. The professional negligence of Defendants Mercy Medical Center, Rodney Dean, MD, Albert Okine, PA, Jeremy Vande Zande, MD, Robbie Robinson, NP and Eileen Middleton, PA was a violation of an acceptable standard of care.

All the named defendants are healthcare providers licensed under Iowa Code chapter 147. Struck's petition alleged no premises liability claim or that any unsafe condition in her hospital room caused her to fall.

The defendants filed answers followed by motions to dismiss pursuant to Iowa Code section 147.140(6). Struck resisted the motions by arguing that the time to file the certificate of merit had not yet started to run because not all of

the defendants had been served and filed answers.[1] Struck requested an extension to file the certificate of merit until sixty days after the final defendant was served and filed an answer. Struck filed no certificate of merit affidavit. Struck never sought leave to amend her petition to allege any premises liability or other ordinary negligence claim.

After a hearing, the district court granted the motions to dismiss and denied Struck's request for an extension of the time to file a certificate of merit. The district court determined that section 147.140 applied to Struck's claims of professional negligence against the defendants and the negligent hiring claim against Mercy. Struck timely appealed.

On appeal, Struck concedes that the district court properly dismissed the professional negligence claims pursuant to Iowa Code section 147.140.[2] Struck abandoned her argument that the sixty-day deadline to file the certificate of merit was not triggered because all defendants had not been served and does not challenge the district court's denial of her untimely motion for extension to file a certificate of merit. Rather, Struck asserted for the first time on appeal that her petition encompassed ordinary negligence claims of premises liability or nonprofessional negligence not subject to the certificate of merit requirement.

---

[1]Defendant Robbie L. Robinson, NP, had not yet been served and had not filed an answer or otherwise appeared. Struck dismissed her claims against defendant Vande Zande with prejudice on August 20, 2020.

[2]In her appellate brief, Struck argues "[t]he District Court *should have dismissed the professional negligence claims, based on § 147.140, only* and allowed the case to continue for the broad scope of discovery to flesh out the facts, formulate the issues and determine the various theories of liability." (Emphasis added.)

The court of appeals affirmed the dismissal of the claims against the defendants for professional negligence and negligent hiring and retention of professional staff. But the court of appeals held the district court erred in dismissing all claims against Mercy pursuant to Iowa Code section 147.140. The court of appeals concluded Struck sufficiently pleaded ordinary negligence claims against Mercy that require no certificate of merit. Mercy sought further review, which we granted.

**II. Standard of Review.**

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 298 (Iowa 2020) (quoting *Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014)). "For purposes of reviewing a ruling on a motion to dismiss, we accept as true the petition's well-pleaded factual allegations, but not its legal conclusions." *Id.* (quoting *Shumate*, 846 N.W.2d at 507). "[W]e will affirm a dismissal only if the petition shows no right of recovery under any state of facts." *Id.* (alteration in original) (quoting *Rieff v. Evans*, 630 N.W.2d 278, 284 (Iowa 2001) (en banc)). "We construe the petition in 'its most favorable light, resolving all doubts and ambiguities in [the plaintiff's] favor.'" *Id.* at 298–99 (alteration in original) (quoting *Schreiner v. Scoville*, 410 N.W.2d 679, 680 (Iowa 1987)). Yet we recognize that plaintiffs may effectively plead themselves out of court. *See id.* at 299, 306; *Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 575 (Iowa 2018).

We review rulings on statutory interpretation for correction of errors at law. *Goche v. WMG, L.C.*, 970 N.W.2d 860, 863 (Iowa 2022).

**III. Analysis.**

Our court has not yet interpreted or applied Iowa Code section 147.140, enacted in 2017. *See* 2017 Iowa Acts ch. 107, § 4 (codified at Iowa Code § 147.140 (2018)). This statute provides that the plaintiff in a medical malpractice action requiring expert testimony must file a certificate of merit signed by a qualified expert within sixty days of the defendant's answer. *See* Iowa Code § 147.140(1).[3] "Failure to substantially comply with [the certificate of merit requirement] shall result, upon motion, in dismissal with prejudice of each cause of action as to which expert witness testimony is necessary to establish a prima facie case." *Id.* § 147.140(6).

It is well settled that expert testimony is required to prove professional negligence claims against healthcare providers. "To establish a prima facie case of medical malpractice, a plaintiff must produce evidence that (1) establishes the applicable standard of care, (2) demonstrates a violation of this standard, and (3) develops a causal relationship between the violation and the injury sustained." *Oswald v. LeGrand,* 453 N.W.2d 634, 635 (Iowa 1990). "Ordinarily, evidence of the applicable standard of care—and its breach—must be furnished by an expert." *Id.*;[4] *see also Susie v. Fam. Health Care of Siouxland, P.L.C.,* 942

---

[3]The sixty-day deadline can be extended by agreement of the parties or "for good cause shown and in response to a motion filed" within that deadline. Iowa Code § 147.140(4).

[4]The *Oswald* court noted two exceptions to the expert witness requirement:

One is where the physician's lack of care is so obvious as to be within the comprehension of a lay[person] and requires only common knowledge and experience to understand. The other exception is really an example of the first situation. It arises when the physician injures a part of the body not being treated.

N.W.2d 333, 337 (Iowa 2020) ("Expert testimony is required to create a jury question on causation when the causal connection 'is not within the knowledge and experience of an ordinary layperson.' " (quoting *Doe v. Cent. Iowa Health Sys.*, 766 N.W.2d 787, 793 (Iowa 2009))). We conclude that the legislature enacted section 147.140 to provide a mechanism for early dismissal with prejudice of professional liability claims against healthcare providers when supporting expert testimony is lacking.

As the court of appeals recognized, Struck concedes that the district court correctly ruled that section 147.140 applies to her claims alleging the professional negligence of her healthcare providers. We hold the court of appeals correctly affirmed the district court's dismissal of Struck's claims alleging professional negligence and negligent hiring, retention, or supervision of professional staff. The fighting issue is whether that determination ends the entire case. We conclude that it does, and the court of appeals erred in construing Struck's petition to encompass ordinary negligence claims that survive a motion to dismiss under section 147.140(6).

---

453 N.W.2d at 636 (quoting *Buckroyd v. Bunten*, 237 N.W.2d 808, 811–12 (Iowa 1976)). For example, expert testimony would not be required in a malpractice action alleging the surgeon removed the wrong kidney or inadvertently left a clamp inside the patient's body. *See, e.g.*, *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989) ("If a doctor operates on the wrong patient or amputates the wrong limb, a plaintiff would not have to introduce expert testimony to establish that the doctor was negligent."); *Whetstine v. Moravec*, 291 N.W. 425, 436 (Iowa 1940) ("It has seldom been questioned, that where the act of omission or commission, upon the part of the surgeon, has been plainly negligent, as where a sponge, gauze, an instrument, or needle has been left in the body, the rule of res ipsa loquitur applies, and that it is also unnecessary to show by expert testimony that such an act does not comport with the required standards.").

**A. Error Preservation.** For the first time on appeal, Struck argued her petition alleged "possible acts of general negligence," including premises liability and lack of supervision by nonprofessional staff of Mercy that would not require expert testimony and fall outside the scope of section 147.140. Struck did not raise that issue in district court and therefore waived it. "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). As Mercy correctly argued in its appellate brief:

> Plaintiff did not preserve arguments pertaining to negligent supervision, premises liability, and general negligence. Plaintiff did not raise these issues before the district court and the district court did not decide . . . these issues. As such, Plaintiff cannot raise these issues on appeal.

We agree. The court of appeals did not address error preservation and decided this unpreserved issue. But because the issue was fully briefed on appeal and decided by the court of appeals, we exercise our discretion to clarify the scope of the new statute.

**B. Section 147.140 Required Dismissal of Struck's Claims Against Mercy.** In our view, the district court correctly ruled that Iowa Code section 147.140 required dismissal of Struck's professional negligence and negligent hiring, retention, or supervision of professional staff claims against Mercy upon her failure to file a certificate of merit. We begin with the text of the statute. Iowa Code section 147.140(1)(*a*) provides:

> In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in the practice of that profession or occupation or in patient care, which includes a cause of action for which expert testimony is necessary to establish

a prima facie case, the plaintiff shall, prior to the commencement of discovery in the case and within sixty days of the defendant's answer, serve upon the defendant a certificate of merit affidavit signed by an expert witness with respect to the issue of standard of care and an alleged breach of the standard of care. The expert witness must meet the qualifying standards of section 147.139.

Section 147.140(1)(*a*) establishes that a certificate of merit is required when a plaintiff pleads (1) an "action for personal injury or wrongful death," (2) "against a health care provider," (3) which is "based upon the alleged negligence in the practice of that profession or occupation or in patient care," and (4) "includes a cause of action for which expert testimony is necessary to establish a prima facie case." The first two requirements are clearly met. Struck brought this action for her personal injury, and Mercy is a healthcare provider. Section 147.140(7) provides that "[f]or purposes of this section, 'health care provider' means the same as defined in section 147.136A," which in turn defines "health care provider" as including "a hospital as defined in section 135B.1."[5] Struck concedes the third and fourth requirements are met as to her "professional negligence" claims against Mercy.[6] As noted, those claims require expert testimony.

---

[5]Section 135B.1(3) defines "hospital" as

a place which is devoted primarily to the maintenance and operation of facilities for the diagnosis, treatment or care over a period exceeding twenty-four hours of two or more nonrelated individuals suffering from illness, injury, or deformity, or a place which is devoted primarily to the rendering over a period exceeding twenty-four hours of obstetrical or other medical or nursing care for two or more nonrelated individuals . . . .

[6]Section 147.140 does not use the term "professional negligence" but talks in terms of "alleged negligence in the practice of that profession or occupation or in patient care"—a broader concept. Iowa Code § 147.140(1). So any claim for negligence in patient care requires the certificate of merit, as long as expert testimony is required to prove up the claim.

The court of appeals, however, viewed Struck's petition as "broad enough to encompass ordinary negligence claims against Mercy" such as "premises liability and negligent hiring, retention, and supervision of non-professional staff," which do not necessarily require expert testimony. But in our view, Struck pleaded no claim outside the scope of section 147.140. Struck is bound by the allegations actually pleaded within the four corners of her petition. By alleging only "professional negligence" claims and not filing a certificate of merit, she effectively pleaded herself out of court. *See Benskin*, 952 N.W.2d at 299, 306. If Struck really had ordinary negligence claims that don't require expert testimony, she should have alleged them in her petition or moved for leave to amend to add them, neither of which she did.

A contrary holding would undermine the legislative goal to enable healthcare providers to quickly dismiss professional negligence claims that are not supported by the requisite expert testimony. Section 147.140(3) incorporates by reference, and works in tandem with, the expert disclosure requirements in Iowa Code section 668.11 (requiring disclosure of expert witnesses in professional liability cases "within one hundred eighty days of the defendant's answer").[7] We have observed that "[s]ection 668.11 is designed to require a

---

[7]Iowa Code section 668.11 provides in part:

> 1. A party in a professional liability case brought against a licensed professional pursuant to this chapter who intends to call an expert witness of their own selection, shall certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert within the following time period:

> *a.* The plaintiff within one hundred eighty days of the defendant's answer unless the court for good cause not ex parte extends the time of disclosure.

plaintiff to have his or her proof prepared at an early stage in the litigation in order that the professional does not have to spend time, effort and expense in defending a frivolous action." *Hantsbarger v. Coffin*, 501 N.W.2d 501, 504 (Iowa 1993) (en banc). "Early disposition of potential nuisance[] cases, and those which must ultimately be dismissed for lack of expert testimony, would presumably have a positive impact on the cost and availability of medical services." *Id.* (quoting *Thomas v. Fellows*, 456 N.W.2d 170, 173 (Iowa 1990)).

Those goals are further served by section 147.140, which requires an expert's certification sixty days from the defendant's answer, even earlier than the one-hundred-eighty-day deadline in section 668.11. And while section 668.11 allows the exclusion of untimely expert testimony, section 147.140 provides an earlier and more complete remedy when the plaintiff lacks an expert: dismissal with prejudice. We agree with the court of appeals' observation that "[s]ection 147.140 gives the defending health professional a chance to arrest a baseless action early in the process if a qualified expert does not certify that the defendant breached the standard of care." *McHugh v. Smith*, 966 N.W.2d 285, 289–90 (Iowa Ct. App. 2021).

---

*b.* The defendant within ninety days of plaintiff's certification.

2. If a party fails to disclose an expert pursuant to subsection 1 or does not make the expert available for discovery, the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown.

At least twenty-eight other states have enacted certificate or affidavit of merit statutes. John D. North, *Tort reform-Certificate of Merit,* 9 Bus. & Com. Litig. Fed. Cts. § 103:31 (5th ed. 2021). While the specific requirements vary,

> [t]he common denominator is that all of the statutes, to one degree or another, require the plaintiff's attorney to do what good practice and economics dictate: perform the due diligence necessary to determine the claim is meritorious before instituting litigation. Unless a case has merit and a deviation from standards of care can be proven through a competent expert, it is senseless to commence a medical malpractice action.

*Id.* As the Pennsylvania Supreme Court recognized, the certificate of merit requirement serves to "identify and weed non-meritorious malpractice claims from the judicial system efficiently and promptly." *Womer v. Hilliker,* 908 A.2d 269, 275 (Pa. 2006); *see also Rabinovich v. Maimonides Med. Ctr.,* 179 A.D.3d 88, 91 (N.Y. App. Div. 2019) (noting the purpose of New York's certificate of merit statute "is to deter the commencement of frivolous actions by counsel on behalf of their clients, and to thereby reduce the cost of medical malpractice litigation and medical malpractice insurance premiums"). The Iowa legislature enacted a comparable certificate of merit statute presumably to further the same goals.

The court of appeals determined that Struck's "surviving" negligence claims should be "fleshed out" in further proceedings on remand to determine whether expert testimony is required. That approach violates the command of section 147.140(6), which mandates the dismissal of pleadings filed without the requisite certificate of merit. The statute is meant to end cases *early* (sixty days after the answer) when expert testimony is required. We decline to allow plaintiffs to evade the statutory requirement on appeal by relabeling a professional

negligence claim as one of ordinary negligence. Struck failed to comply with the certificate of merit requirement in Iowa Code section 147.140, and the district court correctly granted the defendants' motions to dismiss under section 147.140(6). Our liberal pleading rules do not require a different result.

The court of appeals relied on precedent allowing some slip-and-fall claims to proceed against a hospital without expert testimony when routine care is at issue. *See, e.g.*, *Kastler v. Iowa Methodist Hosp.*, 193 N.W.2d 98, 102 (Iowa 1971). "The character of a particular activity of a hospital—whether professional, on the one hand, or nonmedical, administrative, ministerial, or routine care, on the other—is determined by the nature of the activity itself, not by its purpose." *Id.* In *Kastler v. Iowa Methodist Hospital*, the plaintiff "from childhood . . . suffered from spells of headaches, rapid heartbeat, difficult breathing, and dizziness, followed by fainting." *Id.* at 99. "The spells grew worse after she became an adult," and she would become depressed when she regained consciousness. *Id.* Her doctor eventually referred her to a psychiatrist, "who had her admitted to the psychiatric ward of defendant . . . [h]ospital." *Id.* During her stay, the nurse aide sent the plaintiff into the shower room alone, where she lost consciousness and fell. *Id.* at 100. Plaintiff brought a negligence action against the hospital for her injuries. *Id.* The *Kastler* majority held the plaintiff was not required to introduce expert testimony on the standard of care because the activity at issue—"showers of patients—was routine care." *Id.* at 102 (reasoning that "the jury could use its own knowledge and good sense with respect to the hospital's conduct in question"). The plaintiff did not claim improper medication caused her to fall.

Two justices dissented, concluding that without expert testimony, the jury was allowed "to speculate as to the hospital's duty and any breach thereof" and questioned such a result, asking, "What knowledge does a layman have of the proper care of a psychiatric ward patient?" *Id.* at 105 (Moore, C.J., dissenting, joined by LeGrand, J.). Struck, however, expressly alleged professional negligence (including improper medication) caused her injury, not routine care.

More recently, we held that the plaintiff's failure to designate an expert witness precluded liability against a skilled nursing facility that allegedly failed to reposition the plaintiff to avoid bedsores, rejecting the argument that no expert was required because the nursing care was routine or ministerial. *Thompson v. Embassy Rehab. & Care Ctr.*, 604 N.W.2d 643, 646 (Iowa 2000). We gave the following test for determining whether expert testimony is required:

> [I]f all the primary facts can be accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation, [expert testimony is not required].

*Id.* (alterations in original) (quoting *Schlader v. Interstate Power Co.*, 591 N.W.2d 10, 14 (Iowa 1999)). Again, the problem for Struck is that she only pleaded "professional negligence" claims and breach of duties of professional care. *See Bishop v. St. John Hosp.*, 364 N.W.2d 290, 292 (Mich. 1984) (per curiam) (holding plaintiff who sued for professional negligence arising from fall in hospital was not entitled to ordinary negligence instruction).

This is not a case where the hospital patient slipped on a wet floor or tripped over a loose rug. Struck alleges no dangerous condition in her hospital

room that could support a premises liability claim. She doesn't allege a hospital employee dropped her or knocked her over. Rather, Struck alleges the defendants were professionally negligent by providing her with "contraindicated" medication and breached duties of professional care when they negligently "[f]ailed to properly supervise [her] considering the medications she was on and the risks they posed for dizziness." Whether Struck was improperly medicated and supervised in light of her condition without measures to better monitor or restrain her is beyond the understanding of ordinary jurors. The district court correctly ruled that Struck's claims required expert testimony.

Persuasive authority in other jurisdictions holds that expert testimony is required to recover under allegations like those actually pleaded by Struck. *See, e.g.*, *Chamis v. Ashland Hosp. Corp.*, 532 S.W.3d 652, 656 (Ky. Ct. App. 2017) (requiring expert testimony when the patient fell from the hospital bed because "[d]etermining whether [the patient] was at a high risk of falling required an exercise in professional judgment"); *Crosthwait v. S. Health Corp. of Hous.*, 94 So. 3d 1070, 1076 (Miss. 2012) (en banc) ("[A]ny determination on whether Crosthwait could make this walk safely from the bathroom to her bed would require the exercise of professional knowledge and judgment in order to assess her medical condition and consequent physical limitations."); *Rabinovich*, 179 A.D.3d at 94 ("The issues of whether the plaintiff needed additional screening, monitoring, or supervision, and whether she was at risk of falling due to a medical condition, involve the exercise of medical judgments beyond the common knowledge of ordinary persons."); *Santana v. St. Vincent Cath. Med. Ctr. of N.Y.*,

65 A.D.3d 1119, 1119–20 (N.Y. App. Div. 2009) (claims arising from patient's fall from hospital bed sounded in medical malpractice, not ordinary negligence, for hospital's "failure to assess the level of supervision, nursing care, and security required" after administering pain medication); *MacTavish v. R.I. Hosp.*, 795 A.2d 1119, 1120–21 (R.I. 2002) (per curiam) (holding that a patient who fell while walking unescorted from the hospital cafeteria between stress tests required expert testimony "to establish both the hospital's duty of care and a breach of that duty by the nurse to sustain the plaintiff's action" and "[t]hat duty of care, and any breach thereof, was not something that readily would have been obvious or discernible by an ordinary lay person without the assistance of expert opinion evidence"); *McGraw v. St. Joseph's Hosp.*, 488 S.E.2d 389, 398 (W. Va. 1997) (Maynard, J., dissenting) ("[E]xpert testimony was necessary here to demonstrate that there was a failure on the part of St. Joseph's Hospital to properly observe and restrain the appellant in order to prevent him from falling out of bed. Certainly, the proper procedure for evaluating a patient's susceptibility to falling in the absence of restraints and in light of the patient's present medical condition, medical history, degree of medication, etc., is an issue of medical management to be established by expert testimony. This is not something that lay jurors would immediately understand, based on common knowledge and experience.").

Finally, the district court correctly ruled that Iowa Code section 147.140 applied to Struck's negligent hiring and retention claims against Mercy. To recover under that theory, "an injured party must show the employee's

underlying tort or wrongful act caused a compensable injury, in addition to proving the negligent hiring, supervision, or retention by the employer was a cause of those injuries." *Kiesau v. Bantz*, 686 N.W.2d 164, 172 (Iowa 2004) (citation omitted), *overruled in part on other grounds by Alcala v. Marriott Intern., Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). "In other words, the injured party must prove a case within a case." *Id.* Because Struck's underlying professional negligence claims against the individual healthcare professionals were properly dismissed under section 147.140(6), she cannot prove her case within a case to establish Mercy's liability for wrongfully hiring or retaining them.

Other courts have held pre-suit requirements and limitations including a certificate of merit apply to the patient's negligent retention claims against the hospital. *See, e.g., Palms W. Hosp. Ltd. P'ship v. Burns*, 83 So. 3d 785, 788 (Fla. Dist. Ct. App. 2011) (per curiam) (holding that claims alleging hospital's "negligent retention of doctors who failed to treat patients and the hospital's continued staffing of these doctors are claims arising under the Medical Malpractice Act and implicate pre-suit requirements"); *Ray v. Scottish Rite Child.'s Med. Ctr., Inc.*, 555 S.E.2d 166, 168–69 (Ga. Ct. App. 2001) (holding negligent retention claim against hospital was subject to time-bar for medical malpractice actions even though the "action for negligent retention raises different factual issues concerning the hospital's conduct as opposed to [the doctor's] conduct—their claim nevertheless calls into question [the doctor's] professional skills, or lack thereof, and their damages are predicated upon proof that [the doctor's] substandard medical care caused [plaintiff's] injuries"); *see*

*also Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 417 n.22 (Pa. 2021) (noting that vicarious liability claims against the corporate employer of the defendant physician "would necessarily fail if the [certificates of merit] were defective as to its agent, Dr. Stelzer"). Struck cites no contrary authority.

**IV. Disposition.**

For those reasons, we vacate the decision of the court of appeals. We affirm the district court judgment dismissing Struck's entire petition with prejudice.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**